MACKIN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7947, 8678. Promulgated August 26, 1946.

*Myron S. Winer, Esq.,* and *Helmer M. Raphael, Esq.,* for the petitioners.

*A. J. McDowell, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: Section 736 (a)[1] was added to the Internal Revenue Code by section 222 (d) of the Revenue Act of 1942. It gave

---

[1] SEC. 736. RELIEF FOR INSTALLMENT BASIS TAXPAYERS AND TAXPAYERS WITH INCOME FROM LONG-TERM CONTRACTS.

(a) ELECTION TO ACCRUE INCOME.—In the case of any taxpayer computing income from installment sales under the method provided by section 44 (a), if such taxpayer establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, that the average volume of credit extended to purchasers on the installment plan in the four taxable years preceding the first taxable year beginning after December

installment basis taxpayers who could qualify under its terms an election to report income for excess profits tax purposes on the accrual basis rather than the installment basis. A taxpayer who exercised the election was required to recompute his income for all prior excess profits tax taxable years on the accrual basis. The privilege applied only for excess profits tax purposes. For purposes of the income tax, an electing taxpayer was required to continue reporting income on the installment basis under section 44 (a) of the code.

Respondent's action in refusing to allow petitioner any deduction for bad debts with respect to installment sales made prior to January 1, 1940, is based on section 30.736 (a)-3 of Regulations 109, as amended by T. D. 5257, 1943 C. B. 856, the pertinent part of which reads:

SEC. 30.736 (a)-3. COMPUTATION OF INCOME ON STRAIGHT ACCRUAL BASIS.—If the taxpayer has elected under section 736 (a) and section 30.736 (a)-2 to compute for excess profits tax purposes its income from installment sales on the basis of the taxable year for which such income is accrued, in lieu of the basis provided by section 44 (a), the gross income of the taxpayer from installment sales shall be computed upon such accrual basis. Likewise all deductions under section 23 allowable in computing net income and attributable to such sales, shall be computed upon the straight accrual basis. However, no income *or deductions* (*including deductions for bad debts*)· shall be included in the computation of excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. [Italics supplied.]

The last sentence of the above quoted portion of the regulation is predicated, according to respondent, upon that part of section 736 (a) which provides that, in making adjustments to place the income of excess profits tax taxable years on the accrual basis, "no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." The regulation precisely covers the case before us and, if valid, *justifies respondent's action.* Therefore, the ultimate question here is whether that portion of the

31, 1941, was more than 125 per centum of the volume of such credit extended to such purchasers in the taxable year, or the average outstanding installment accounts receivable at the end of each of the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the amount of such accounts receivable at the end of the taxable year, or if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, in either case including only such years for which the income was computed under the method provided in section 44 (a), it may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44 (a). Except as hereinafter provided, such election shall be irrevocable when once made and shall apply also to all subsequent taxable years, and the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. * * *

regulation which we have italicized in the above quotation is valid. For reasons hereinafter stated, we have reached the conclusion that it is not valid and that in adopting it respondent exceeded his authority.

Section 736 (a) is a relief provision, expressly so entitled. The circumstances which brought about its enactment, as explained in the committee reports,[2] were, first, the adoption in the latter part of 1941 of Government credit restrictions increasing the size of down payments and shortening the payment period on installment contracts and, second, the shifting of many business concerns from civilian production into war production. The result to installment basis taxpayers who reported profits for taxation as installments were collected was that there was a bunching of income in one or more taxable years without normal installment selling costs to offset the profits collected. Thus, an installment basis taxpayer might have current taxable income in an amount much larger than in previous years, although the amount of current business done was smaller.

Furthermore, the effect of the existing situation in respect of an installment basis taxpayer was to subject to excess profits tax income arising from sales made in years when there was no such tax—that is, income which in reality accrued before the adoption of the excess profits tax legislation. The excess profits tax, being an emergency or war measure aimed at profits attributable to war years in excess of normal or average profits during prior base period years, fell with undue impact upon certain installment basis taxpayers whose method of accounting, in view of the business conditions and credit restrictions above referred to, did not afford an accurate measure of their true "excess" profits attributable to war years. Recognizing the hardship which thus befell installment basis taxpayers as compared with other taxpayers, Congress gave relief in section 736 (a) by providing that those installment basis taxpayers who could meet certain qualifications might elect to report their income, for excess profits tax purposes, on the accrual basis in lieu of the installment basis.

If section 736 (a) had not been adopted, installment basis taxpayers would have had no election to change to the accrual method of accounting, but they might have changed with the consent of the Commissioner. In such event, however, the Commissioner's regulations would have required them "to return as additional income for the taxable year in which the change is made all the profit not theretofore returned as income pertaining to the payments due on installment sales contracts as of the close of the preceding taxable year." Regulations 103, sec. 19.41-2. Obviously, a change under such circumstances

---

[2] H. Rept. No. 2333, 77th Cong., 1st sess., 1942–2 C. B. 394, 482 ; S. Rept. No. 1631, 77th Cong., 2d sess., 1942–2 C. B. 539, 656.

would still have subjected to excess profits tax, profits attributable to sales made in prior years when there was no such tax, and it would have afforded the taxpayers no relief. Congress therefore provided in section 736 (a) that in adjusting the income for excess profits tax taxable years to conform to the accrual basis, *"no amount shall be included* in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." (Italics supplied.)

Section 44 (a) of the code, providing for the installment basis of reporting income, is concerned with the computation of the amounts of gross profits on installment sales to be returned as income in a given year. It provides that regular dealers in personal property on the installment plan "may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the *gross profit* realized or to be realized when payment is completed, bears to the total contract price." (Italics supplied.) That section does not affect the time for taking deductions for expenses, losses, etc., which the statute allows as deductions (section 23) from gross income (section 22) in determining net income (section 21). "Deductible items are not to be allocated to the years in which the profits from the sales of a particular year are to be returned as income, but must be deducted for the taxable year in which the items are 'paid or incurred' or 'paid or accrued', as provided by sections 43 and 48." Regulations 103, sec. 19.44–1. See also *Blum's, Inc.*, 7 B. T. A. 737, 764, in which it was said of the predecessor of section 44 (a):

\* \* \* the statute goes no farther than to prescribe a method by the use of which a dealer in personal property on the installment plan may return income from installment sales. Nothing is contained in the statute which can possibly be construed to deny to this class of taxpayers the deductions provided for under sections 214 and 234 [predecessors of section 23 of the Code], and the petitioner having employed the accrual method of accounting in keeping its books of account [though reporting its income from installment sales on the installment basis], we think it is entitled to deduct all of the expenses, allowances, and losses enumerated in those sections, which were paid or incurred, or paid or accrued within the taxable years, with the single reservation that it may not deduct as bad debts such portion of its installment accounts receivable not previously returned as income.

Section 736 (a), like section 44 (a), is concerned with a method of computing the amounts of gross profits on installment sales to be returned as income in a given year. We find nothing whatever in that section relating to deductions from gross income to determine net income or to the time for taking deductions. Nor do we find anything in the legislative history to suggest that Congress intended in any way to change the statutory provisions with respect to deductions. Section 23 of the code provides what deductions are allowable to

accrual basis taxpayers as well as to installment and cash basis tax-payers, and section 43 provides for all three when the allowable deductions are to be taken. Had Congress intended to make any change with respect to allowable deductions or the time for taking them, it could easily have done so. In the language of the code, deductions are "allowed" or "allowable"; where the term "includes" or "included" is used, it ordinarily relates to items of income. We think it an unwarranted extension of the term "included" in section 736 (a) to read into it, as the Commissioner has done in his regulation, any provision with respect to deductions. The Commissioner is without authority thus to amend the law.

In support of his regulation respondent advances an equitable argument to the effect that, since no income from pre-1940 sales is subjected to excess profits tax, it is only fair that no deductions relating to such sales should be allowed, and that if deductions are allowed a qualified electing installment basis taxpayer gains an unfair advantage over other taxpayers consistently reporting on an accrual basis. At first blush there might appear to be some merit in the argument, but we think it proceeds upon a fundamental fallacy. In the case of accrual basis taxpayers generally, the profits attributable to pre-1940 sales are no more subject to excess profits tax than those of installment basis taxpayers electing under section 736 (a), yet the accrual basis taxpayers are allowed deductions for their operating expenses, collection expenses, losses and the like, in the year in which incurred, although they may be attributable to pre-1940 sales. Furthermore, if it be said that an accrual basis taxpayer had accrued and paid tax on all the income from pre-1940 sales in years prior to 1940, it must not be overlooked that an installment basis taxpayer continues to report his income for income tax purposes on the installment basis throughout the excess profits tax taxable years. So, it is apparent that, as to income from pre-1940 installment sales, neither an accrual basis taxpayer nor an electing installment basis taxpayer pays any *excess profits tax*, while both pay *income tax* thereon, with the one reservation that the installment basis taxpayer does not pay income tax on uncollected profits reflected in those installment accounts which become worthless.

For present purposes, therefore, the only difference we perceive between the two types of taxpayers is that in the single case of the deduction for bad debts, the amount of the electing installment basis taxpayer's deductible loss is less than that of the accrual basis taxpayer to the extent of the unrealized profits in the particular installment contracts which the latter has taken into income and paid income tax thereon, but which the former has not. In other words, where an accrual basis taxpayer has accrued and paid tax on the uncollected profits in an

installment contract which later becomes worthless, thereby capitalizing such profits, his loss of capital—and the measure of his bad debt deduction—upon default of the contract is the uncollectible balance of the contract. On the other hand, the installment basis taxpayer's loss of capital—and the measure of his bad debt deduction—is the unrecovered cost of the goods sold. Cf. *Lenox Clothes Shops, Inc.*, 45 B. T. A. 1122; Regulations 103, sec. 19.44–1.

All the petitioner is here claiming is the allowance of deductions for the unrecovered cost of goods represented in the installment accounts receivable charged off as worthless in the taxable years. To these we think petitioner is clearly entitled. There is no warrant for the respondent's regulation precluding the allowance of such deductions to qualified electing taxpayers.

*Decisions will be entered under Rule 50.*