## FARMERS COOPERATIVE COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68952. Filed November 17, 1959.

*Robert C. Guenzel, Esq.*, for the petitioner.
*Joseph D. Skinner, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows:

| Year | Amount |
| --- | --- |
| 1953 | $287.27 |
| 1954 | 3,319.34 |

The issues presented for our decision are the correctness of the respondent's action in determining (1) that the patronage refunds of the petitioner for 1953 and 1954 are not excludible from its gross income and (2) that petitioner did not make a timely election to amortize a grain storage facility under section 169 of the Internal Revenue Code of 1954.

Additional issues presented by the pleadings have been settled by stipulation of the parties.

### GENERAL FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

The petitioner is a nonexempt farmers cooperative association organized under the laws of the State of Nebraska with its office and place of business located at Virginia, Nebraska.

Petitioner filed its income tax returns for 1953 and 1954 with the director of internal revenue for the district of Nebraska. It kept its books and records and prepared its income tax returns on the basis of an accrual method of accounting.

### Issue 1.

### FINDINGS OF FACT.

On its income tax return for 1953, the petitioner claimed an exclusion from its gross income for patronage refunds in the total amount of $2,415.35. On its return for 1954, it claimed an exclusion from gross income for patronage refunds in the amount of $10,470.72.

The petitioner's only function was to market grain for its members. The patronage refunds excluded by petitioner for 1953 and 1954 were charged against income realized from transactions with the particular patrons who were entitled to receive the refunds, not out of income realized from transactions with nonpatrons. The patronage refunds, when allocated, were made ratably to the individual patrons in proportion to the amount of grain sold by each of them to the petitioner, and were made pursuant to an existing obligation on the cooperative to make certain refunds of earnings.

The stockholders of petitioner who were present at its annual meeting held on March 12, 1954, were notified of the total patronage dividend in the amount of $2,415.35 for 1953. However, the individual patrons of petitioner were not notified of the dollar amounts of their separate patronage refunds for 1953 until February 10, 1955.

The stockholders of petitioner attending its annual meeting on February 28, 1955, were notified of the total patronage dividend in the amount of $10,470.72 payable for the year 1954. The individual patrons were not notified of the amounts of their patronage refunds for 1954 until October 10, 1956.

OPINION.

The respondent has taken the position that the patronage refunds claimed by the petitioner on its income tax returns for 1953 and 1954 are not excludible. The petitioner is not an exempt farmers' cooperative under section 101(12) of the 1939 Code or section 521 of the 1954 Code. Neither the 1939 Code nor the 1954 Code expressly provides for the exclusion from gross income of patronage dividends, refunds, or rebates by a taxable cooperative association. However, it has been the long-established administrative policy of the Commissioner to permit the exclusion of true patronage dividends by nonexempt cooperatives under certain conditions. I.T. 1499, I-2 C.B. 189, 191 (1922); A.R.R. 6967, III-1 C.B. 289 (1924); S.M. 2595, III-2 C.B. 238 (1924); G.C.M. 12393, XII-2 C.B. 398 (1933); G.C.M. 17895, 1937-1 C.B. 56; I.T. 3208, 1938-2 C.B. 127; Rev. Rul. 57-59, 1957-1 C.B. 24.

The respondent's practice in permitting the exclusion of patronage dividends by taxable cooperatives is recognized both in section 101(12)(B) of the 1939 Code and in section 522(b)(2) of the 1954 Code, which provide that patronage dividends, refunds, and rebates to patrons with respect to their patronage shall be taken into account in computing net taxable income (of an *exempt* cooperative) in the same manner as in the case of a cooperative organization not exempt.

The basis for the Commissioner's policy in allowing the exclusion of patronage dividends by nonexempt cooperatives is that such divi-

dends in reality represent either rebates to patrons of a part of the price initially paid by them on purchases made through a cooperative purchasing organization, or an additional cost paid by a cooperative marketing organization to its patron for products sold to it. The propriety of the respondent's practice in permitting such exclusions by nonexempt cooperative associations has been recognized and sustained by this and other courts. *Midland Cooperative Wholesale*, 44 B.T.A. 824; *Fruit Growers Supply Co.*, 21 B.T.A. 315, affd. 56 F.2d 90; *United Cooperatives, Inc.*, 4 T.C. 93; *Clover Farm Stores Corporation*, 17 T.C. 1265; *Farmers Cooperative Co.* v. *Birmingham*, 86 F. Supp. 201 (N.D. Iowa).

The foregoing decisions indicate that an allocation of earnings by a cooperative to its patrons cannot qualify as a true patronage dividend unless (1) the allocation was made pursuant to a legal obligation which existed at the time the participating patrons transacted their business with the cooperative, (2) the allocation was made out of profits or income realized from transactions with the particular patrons for whose benefit the allocation was made, and (3) the allocation of earnings was made ratably to the particular patrons whose patronage created the income from which the allocated refund was made. *Pomeroy Cooperative Grain Co.*, 31 T.C. 674; *Clover Farm Stores Corporation, supra; Farmers Cooperative Co.* v. *Birmingham, supra.*

The petitioner maintains that it has satisfied all three of these requirements and is therefore entitled to exclude from its gross income the amounts claimed by it as patronage dividends on its income tax returns for 1953 and 1954.

The respondent does not question the existence of a legal obligation pursuant to which the refundable earnings were set aside, and he also concedes that the patronage dividends in question were withdrawn from income realized from transactions with the patrons who were entitled to receive the refunds. He contends, however, that petitioner has lost its right to exclude the amounts claimed on its returns as patronage dividends for 1953 and 1954 because it has failed to make a proper and timely allocation of earnings. The respondent points to the provisions of his regulations governing the allocation of such refunds by an exempt cooperative,[1] which explicitly require that actual notice be given to each patron of the amount of his separate

---

[1] (3) *Allocation.* The term "allocation" includes distributions made by a cooperative association to a patron in cash, merchandise, capital stock, revolving fund certificates, retain certificates, certificates of indebtedness, letters of advice, similar documents, or in any other manner whereby there is disclosed to a patron the dollar amount apportioned on the books of the association for the account of such patron. Thus, a mere credit to the account of a patron on the books of the cooperative associations, without disclosure to the patron, is not an allocation. [Regs. 118, sec. 39.101(12)–2(b)(3) ; Income Tax Regs., sec. 1.522–1(b)(3).]

share of the total patronage refund. Although these provisions of the respondent's regulations do not apply directly to a taxable cooperative association, the same definition of the term "allocation" as set forth in the above-cited provisions is made applicable to non-exempt cooperatives as well as exempt cooperatives by other provisions in the respondent's regulations governing the filing of information returns by any corporation allocating $100 or more in patronage refunds during the taxable year. Regs. 118, sec. 39.148(f)-1(d); Income Tax Regs., sec. 1.6044-1(c).

The petitioner concedes that the actual notice to its patrons required by the respondent's regulations was not given until a considerable period of time after its returns for 1953 and 1954 were filed. It contends, however, that the provision in the respondent's regulations requiring actual notice to a patron of the dollar amount of his share of the patronage dividend bears no reasonable relation to the excludibility by a cooperative of patronage dividends and is therefore invalid. In support of its position, the petitioner asserts that neither this nor any other court has laid down such a requirement and, further, that as an accrual basis taxpayer, it is entitled to a deduction for an accrued liability for the year in which such liability actually accrued, regardless of whether or not the creditor was apprised of the accrual.

The petitioner, however, has failed to show that the requirements imposed by the respondent's regulations are in any way unreasonable or inconsistent with the provisions of the Internal Revenue Code, or are otherwise invalid. See *Manhattan General Equipment Co.* v. *Commissioner*, 297 U.S. 129; *Faucette Co.*, 17 T.C. 187; *Selma Berry Trust*, 26 T.C. 344.

It is of course a generally correct statement of the law, as petitioner contends, that an accrual basis taxpayer must deduct its expenses in the year in which the deductible expenses are incurred. It is axiomatic, however, that an item of expense has not properly accrued as a deductible expense for income tax purposes unless all of the events necessary to establish the right to a deduction of the item have occurred in the taxable year for which the deduction is claimed. *United States* v. *Anderson*, 269 U.S. 422; *Anderson-Clayton Securities Corporation*, 35 B.T.A. 793. In the case of cooperatives an accrued patronage dividend must either be allocated or paid to the patrons prior to the time for the filing of the return if the dividend is to be excludible. *Pomeroy Cooperative Grain Co., supra; Clover Farm Stores Corporation, supra.* The fact that a patronage refund was accrued by the cooperative in favor of its patron is not alone sufficient to establish the excludibility of the refund. The record before us does not show that the patronage dividends here in question

were either allocated or paid by petitioner to its patrons prior to the prescribed time for the filing of its income tax return. Consequently, the petitioner has failed to demonstrate that the events necessary to establish the excludibility of the patronage refund in question have occurred prior to the due date of its return.

Although the respondent has not suggested the purpose of the requirement of its regulations concerning notice to a patron of a cooperative, it seems altogether likely that such a requirement might well serve a useful purpose by insuring notification to nonmember patrons who would not normally have the privilege of attending meetings of the association or inspecting its books and would therefore be unable to ascertain the amount of refund, if any, to which they would be entitled. Further, the pattern of taxation adopted by Congress in section 101(12)(B) of the 1939 Code and section 522(b)(2) of the 1954 Code, with respect to the taxation of the refundable earnings of exempt cooperative associations indicates a congressional intent to tax to the individual patron his share of a patronage refund deducted by the cooperative. S.Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 21; cf. *Long Poultry Farms* v. *Commissioner*, 249 F.2d 726, reversing 27 T.C. 985. Cooperative earnings not paid or allocated to patrons are taxable to the cooperative association. S.Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 21. The provisions of the respondent's regulations here in question would have the effect of increasing the likelihood of an early inclusion, as accrued income or an item constructively received by a patron, of his share of a patronage dividend credited to him and deducted by a cooperative.

Section 522(b) of the 1954 Code specifically requires allocations of patronage dividends by exempt cooperatives to be made by the date the return is due. See sec. 6072(d), 1954 Code. The portion of the respondent's regulations here in question (Regs. 118, sec. 39.101(12)-2(b)(3) and sec. 39.148(f)-1 (a) and (b); Income Tax Regs., sec. 1.522-1(b)(3) and sec. 1.6044-1 (a) and (b)) read in conjunction with section 53(a)(1) of the 1939 Code and section 6072(b) of the 1954 Code require a taxable cooperative association to pay or allocate patronage refunds by the time its return is due if such refund is to be excludible. To sustain the contentions advanced by the petitioner would result in extending to a nonexempt cooperative association a privilege which clearly would be denied an exempt cooperative under the terms of the Code and the respondent's regulations. We are unable to find any reason for so holding.

Accordingly, since the petitioner's patrons concededly were not notified of the amount of the patronage refund to which they were

entitled for 1953 and 1954 prior to March 15, 1954, and March 15, 1955, respectively, the petitioner has failed to make a proper and timely allocation of its patronage dividends for those years, and the exclusions which it claimed on its income tax returns for 1953 and 1954 for patronage dividends must be disallowed.

## *Issue 2.*

### FINDINGS OF FACT.

Petitioner completed construction of a grain storage facility in June 1954 at a total cost of $24,519.50. The estimated useful life of this facility as of July 1, 1954, was 20 years. The petitioner did not claim a deduction for amortization or depreciation on this facility on either its 1954 or 1955 income tax return, but attached to its petition a statement of its election to take amortization deductions for those years, together with documents purporting to be amended returns for 1954 and 1955.

### OPINION.

The petitioner completed the construction of a grain storage facility in June 1954, but has failed to make an election to deduct amortization on this facility on its income tax returns for either 1954 or 1955. The provisions of section 169(b) of the 1954 Code [2] specifically require that a proper election to claim a deduction for amortization may be made "only by a statement to that effect in the return for the taxable year in which the facility was completed." Inasmuch as the petitioner has failed to include such a statement in its returns for either of the years in issue, it clearly has not made a proper or timely election to amortize its grain storage facility within the meaning of section 169(b) of the 1954 Code and is therefore not entitled to a deduction for the amortization of such facility.

*Decision will be entered under Rule 50.*

---

[2] SEC. 169. AMORTIZATION OF GRAIN-STORAGE FACILITIES.

(b) ELECTION OF AMORTIZATION.—The election of the taxpayer under subsection (a)(1) to take the amortization deduction and to begin the 60-month period with the month following the month in which the facility was completed shall be made only by a statement to that effect in the return for the taxable year in which the facility was completed. The election of the taxpayer under subsection (a)(1) to take the amortization deduction and to begin such period with the taxable year succeeding such year shall be made only by a statement to that effect in the return for such succeeding taxable year. The election of the taxpayer under subsection (a)(2) to take the amortization deduction shall be made only by a statement to that effect in the return for the taxable year in which the facility was acquired. Notwithstanding the preceding three sentences, the election of the taxpayer under subsection (a)(1) or (2) may be made, under such regulations as the Secretary or his delegate may prescribe, before the time prescribed in the applicable sentence.